NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0164n.06

No. 09-3396

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 15, 2010
LEONARD GREEN, Clerk

AIDA MBAYE,                                    )
                                               )
     Petitioner,                                )
                                               )
v.                                             )   ON PETITION FOR REVIEW FROM
                                               )   AN ORDER OF THE BOARD OF
ERIC H. HOLDER, Jr., United States             )   IMMIGRATION APPEALS
Attorney General,                              )
                                               )
     Respondent.                                )
                                               )
                                               )

Before: GIBBONS, SUTTON, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**.  Petitioner Aida Mbaye seeks review from a

March 10, 2009, decision of the Board of Immigration Appeals ("BIA") denying a motion to reopen

her petition for asylum, withholding of removal, and protection under the Convention Against

Torture ("CAT"), based on new evidence and to submit a second asylum application based on

changed circumstances in Mauritania.  For the reasons that follow, we deny the petition for review.

I.

On December 4, 2000, Mbaye filed an application for asylum, withholding of removal, and

protection under the CAT, on the grounds that she feared persecution if returned to Mauritania due

to her Wolof ethnicity and her participation in the local women's group Boolo.  She testified that she

had lived and farmed in the village of Keur Madické in the Senegal River Valley until fleeing to

Senegal on May 1, 2000, after white Moors threatened her life and took her land.  She maintains that

on October 1, 2000, she entered the United States by boat, without inspection, and with the help of a people smuggler.

In her original asylum application and testimony before the Immigration Judge ("IJ"), Mbaye claimed a well-founded fear of persecution if returned to Mauritania for the following reasons. She testified that she had suffered from the historic discrimination of black Mauritanians by the white Moor population. Although not included in her asylum application, she testified that both her father and brother were killed because of this ethnic tension.[1] She stated that both were killed in 1998: her father was burned in his home after he and family members got into a fight with white Moors; her brother was stabbed by white Moors during a separate altercation. Mbaye stated that, following their deaths, she lived with her son and mother on the family farm until a white Moor claimed ownership of their land in 2000After Mbaye contested the claim, the white Moor and several bodyguards beat Mbaye and her son. The Moor then returned with policemen twice in April 2000, at which point Mbaye was detained and raped before being taken to a military work camp for three weeks. She maintained that when she was released on April 25, 2000, authorities threatened to kill her if they saw her again. When she nevertheless returned to Keur Madické, her son and mother had left for another village; they have since relocated to Senegal. She hid at a neighbor's home until leaving for Senegal on May 1, 2000. Mbaye testified that she then stayed in Senegal for four months until a smuggler arranged for her to go to the United States by ship. She allegedly arrived in Baltimore, Maryland, on October 1, 2000, and, after slipping off the boat dressed in some sort of uniform, traveled to Cincinnati. Mbaye also claimed that she feared persecution because of her involvement

---

[1]In her successive asylum application, submitted with her motion to reopen, Mbaye claimed that her brother and father were harassed only after, and because, she joined the local women's group Boolo and that it was because of her activities with that group that she feared persecution if returned to Mauritania.

with Boolo, a women's group in her village that promoted the education of women. She claimed that she joined Boolo in 1998 and helped to teach girls how to read. In testimony, Mbaye stated that the white Moors did not like the organization but did not detail any specific action taken against the organization or against her because of her membership in it. In her second asylum application, submitted with the motion to reopen, she asserted for the first time that the Moors wanted to eliminate her due to her association with this group and that the intimidation of her family began after and because of her activities with Boolo. Her description of Boolo as a group dedicated to women's literacy in her asylum applications and testimony was in some tension with the representation of the group as a pro-democracy group in Mbaye's brief to this court.

Mbaye supplemented her original application with many articles and documents—most dated 1989–1994—recounting the persecution of black Mauritanians by white Moors and describing forcible expulsions from and land expropriation in the Senegal River Valley beginning in 1989 and culminating in massacres of black Mauritanians in 1990–1991. That such atrocities took place at that time and location is undisputed. However, Mbaye did not provide evidence that such activity took place in the late 1990s or in 2000, when she claims that she was dispossessed of her property and her family members killed. Indeed, country reports submitted by both parties suggest that, although there are ongoing human rights abuses in Mauritania, claims on land and political disappearances have largely ceased since the mid-1990s. The reports further document that those black Mauritanians expelled during 1989–1991 have been returning to Mauritania since 1995.[2]

At a preliminary hearing, Mbaye initially conceded removability but refused to designate a

---

[2]Mbaye submitted other articles and documents, dating from the late 1990s and 2000s, that describe the ongoing practice of slavery in Mauritania. While those articles may be accurate, they are not relevant to Mbaye's asylum claim because she never asserted that she was held in slavery or feared that she would be upon return.

country of removal. The IJ designated Mauritania as the country of removal, but postponed the proceedings because Mbaye appeared without any identity documentation. As proof of her alleged date of entry, Mbaye later submitted affidavits from two individuals who swore that Mbaye arrived in Cincinnati, Ohio, in October 2000 and moved to Detroit, Michigan, in December 2001. The two individuals were unavailable to testify before the IJ, and their affidavits could not verify Mbaye's whereabouts before her arrival in Cincinnati in October 2000.

At the final hearing, at which Mbaye and one witness testified, the IJ denied her application in its entirety. He first found that Mbaye failed to establish her identity, her nationality, or the time, place, and manner of her entry into the United States. Consequently, she had not demonstrated that her application for asylum was timely. He noted that the identity documents that she provided for the first time two weeks before the June 2, 2006, hearing—and that she argued she had when she arrived in the United States—were "somewhat questionable on the[ir] face." Mbaye produced a certificate of nationality, which was based in part on a residency card for the city of Nouakchott, where Mbaye testified that she had never lived, and on which Nouakchott is misspelled at least once. A national identity card entered into the record also indicated residency in Nouakchott, and the uncertified birth certificate provided was issued nineteen years after Mbaye's birth. The IJ also found that the witness who testified that he had known Mbaye when she was in Senegal in 2000 was not credible because his testimony was internally inconsistent and irrelevant because he could not prove that he was in Senegal in 2000.

However, despite his finding that Mbaye did not meet the threshold requirements of eligibility for asylum, the IJ addressed the merits of her case. In doing so, he found that Mbaye was not credible. He noted that she offered no corroborating evidence of her experience in Mauritania, even though evidence was procurable from Senegal or even Mauritania. He also took note of several

inconsistencies that went to the heart of Mbaye's asylum claim, including, *inter alia*: (1) her application stated that she had never been married, but she testified that she divorced in 1992(2) at an asylum interview in April 2003, Mbaye stated that her mother lived in Senegal, but during testimony in 2006, she said that her mother had gone to Senegal for the first time in April 2005; (3) Mbaye testified that the well-documented disturbances in Mauritania in 1989–1990 did not affect her village, despite the fact that expulsions and massacres of entire black Mauritanian villages, like Mbaye's, in the Senegal River Valley were wide-spread at that time; (4) she was unable to give discrete examples of discrimination against the Wolof or herself by white Moors; (5) she testified inconsistently about whether her brother or her father was killed first and was very vague about by whom and why they were killed; (6) her description of the land dispute placed it as happening in 2000, after other Mauritanians who had been dispossessed of their land in the early 1990s had returned, and thus was in conflict with the history of Mauritania; and, (7) Mbaye testified first that she spoke with her mother in Senegal by phone weekly and had spoken with her on the previous day, and then stated that she could not call Senegal when asked why she could not obtain corroboration from her mother. Given the discrepancies between Mbaye's testimony and applications, the questions regarding her identity documentation, the propensity of Senegalese citizens to apply for asylum as Mauritanians, and the incongruities between Mbaye's personal narrative and the history of Mauritania, the IJ denied Mbaye's application and issued an order of removal on June 2, 2006. Mbaye timely appealed.

The BIA affirmed on June 13, 2008. The BIA found that Mbaye failed to demonstrate by clear and convincing evidence that she had filed within one year of arriving in the United States under 8 U.S.C. § 1158(a)(2)(B) and that she failed to establish an exception to that time bar as permitted by 8 U.S.C. § 1158(a)(2)(D). Citing the inconsistencies in Mbaye's testimony, the

evolution of her factual claims over time, and the questions regarding her nationality and identity, the BIA also affirmed the IJ's adverse credibility finding. Mbaye's lack of credibility rendered her ineligible for asylum and undermined her application for withholding of removal and protection under the CAT. The IJ's order of removal thus became final, 8 C.F.R. § 1241.1(a), and Mbaye did not petition this court for review of the BIA's decision.

On September 11, 2008, Mbaye filed a motion to reopen her case. In the motion, she alleged: (1) that the overthrow of the democratically elected government of Mauritania in August 2008 constituted material, "new circumstances requiring the review of [her] newly submitted asylum application" and remand to the IJ for adjudication; and (2) that newly discovered material evidence from a witness who had known Mbaye in Mauritania supported reopening Mbaye's original case. The motion also appeared to appeal the IJ's original determination that Mbaye was incredible and ineligible for asylum. Attached to the motion were: an unsigned and unnotarized witness statement by a person claiming to have known Mbaye in Mauritania in the 1990s, when both were involved in "the program of alphabetization for women and children"; a signed statement from Mbaye clarifying some of the testimony that the IJ had found incredible; the chapter on Mauritania in the Central Intelligence Agency's *The World Factbook*; an article about the August 2008 coup,; and a fact page on Mauritania from Amnesty International's website that predated the coup. On September 29, 2008, Mbaye filed supplemental documents, which included six articles reporting on the Mauritanian coup and its aftermath and a State Department profile of Mauritania that predated the coup. At the same time, Mbaye filed her second application for asylum, withholding of removal, and protection under the CAT. She argued that the coup increased the likelihood that she would be persecuted because of her pro-democratic actions and because the non-democratic government was unable to stop persecution based on race and tribe.

The BIA denied the motion to reopen on March 10, 2009, citing *Matter of Coelho*, 20 I. & N. Dec. 464 (B.I.A. 1992), and finding "insufficient evidence that the respondent has met the heavy burden of demonstrating that, were the record to be remanded, it would likely change the result of her case." The BIA determined that Mbaye had failed to rebut or even address the IJ's adverse credibility finding or the IJ's questions regarding her eligibility for asylum based on a lack of proof of identity or timeliness. The BIA also concluded that Mbaye failed to demonstrate how the regime change in Mauritania affected her individually, and, therefore, found that she had presented no "new or material evidence which would persuade [it] to change the result of [the] June 13, 2008, decision." Mbaye timely appealed the March 10, 2009, order. *Mbaye v. Holder*, No. 09-3396, Petition for Review (6th Cir. Apr. 9, 2009).

## II.

In her petition for review, Mbaye requests that we review the BIA's March 10, 2009, order denying her motion to reopen. *Id.* However, in her appellate brief, she seeks general relief, consideration of her second application, and review of the BIA's June 13, 2008, order affirming her order of removal. Because we may review only the decision for which the petition for review was filed, *Stone v. INS*, 514 U.S. 386, 405–06 (1995), the sole issue properly before us is whether the BIA abused its discretion by denying Mbaye's September 11, 2008, motion to reopen.[3]

---

[3]Furthermore, we cannot review Mbaye's claim—raised for the first time in her appellate brief—that she was denied due process of law because she was not allowed to present evidence that she would be eligible for humanitarian asylum under 8 C.F.R. § 208.13(b)(1)(iii)(B). There is no evidence in the record that Mbaye petitioned the IJ for withholding based on humanitarian grounds, and her appeal to the BIA contained no due process claim. According to 8 U.S.C. § 1252(d)(1), we may review a claim "only if the alien has exhausted all administrative remedies available." This exhaustion requirement is jurisdictional in nature, and, therefore, we lack jurisdiction to review the due process claim. *See Liu v. Holder*, 560 F.3d 485, 494 (6th Cir. 2009); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *see also Vakeesan v. Holder*, 343 F. App'x 117, 126–27 (6th Cir. 2009).

In her motion to reopen, Mbaye requested: (1) to submit a successive application due to changed country conditions and personal circumstances following the 2008 coup in Mauritania; and (2) to reopen the proceedings based on new evidence of Mbaye's Mauritanian nationality. Mbaye failed to assert or develop any argument in her brief regarding the latter and has therefore waived this claim. *Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009) (citations omitted) ("[A]n issue that is not raised in a party's briefs may generally be deemed waived."). Therefore, we need only address the BIA's decision to deny Mbaye's request to submit a second asylum application pursuant to 8 U.S.C. § 1158(a)(2)(D) based on changed circumstances.[4]

### III.

We review the BIA's denial of a motion to reopen for abuse of discretion regardless of the grounds on which reopening is sought. *INS v. Doherty*, 502 U.S. 314, 323 (1992). The Supreme Court has noted that the Attorney General's discretion to grant or deny such motions is "broad," *id.*, and that "the moving party bears a heavy burden," *INS v. Abudu*, 485 U.S. 94, 110 (1988). "A reviewing court must possess a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (citing *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir.

---

[4]Citing *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006), the government urges us to find that Mbaye waived "any challenge" to the BIA's March 10, 2008, order. In *Johnson*, this court reaffirmed the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." 440 F.3d at 845–46; *see also Sunarto v. Mukasey*, 306 F. App'x 957, 962 (6th Cir. 2009). This waiver is prudential rather than jurisdictional. *Gasca-Rodriguez v. Holder*, 322 F. App'x 447, 449 (6th Cir. 2009) (citation omitted). The government accurately notes that the BIA's denial of the motion to reopen is only cursorily discussed in the summary of argument section and that there is but one reference to the impact of the August 2008 *coup* on Mbaye's case. However, having reviewed the brief, the motion to reopen—filed by prior counsel—and the record on appeal, we find Mbaye's arguments for submitting a successive application are ascertainable and reviewable. *See Abeshi v. Mukasey*, 259 F. App'x 775, 778 (6th Cir. 2008).

1982)).  Therefore, we may not displace the BIA's determination unless the decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzalez*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani*, 669 F.2d at 1161) (internal quotation marks omitted).

IV.

The Supreme Court has outlined "three independent grounds on which the BIA may deny a motion to reopen":

> First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought. . . .  Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence, 8 C.F.R. § 3.2 (1987) . . . .  Third, in cases in which the ultimate grant of relief is discretionary . . . , the BIA may leap ahead, as it were, over the two threshold concerns . . . , and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief."

*Abudu*, 485 U.S. at 104–05.  The BIA denied Mbaye's motion on all three grounds.  We hold that the BIA did not abuse its discretion in finding that Mbaye failed to present previously unavailable, material evidence or in finding that she failed to present a *prima facie* case for asylum, withholding of removal, and protection under the CAT.  Because the BIA properly denied the motion based on these two independent grounds, and because the granting of withholding of removal and protection under the CAT is not discretionary, *see* 8 C.F.R. § 208.17; 8 U.S.C. § 1231(b)(3), we need not address the third ground.

A.

In order to meet her burden, Mbaye must show that the evidence of changed circumstances are "material [] and not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1); *see also Allabani*, 402 F.3d at 675 ("[T]he [BIA] may determine,

as a sufficient ground for denying a motion to reopen, whether the alien has produced previously unavailable, material evidence." (citation omitted)). Material evidence is such that "if proved, [would] change the outcome." *Vakeesan*, 343 F. App'x at 122; *see also Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992). This Mbaye has not done.

The only previously unavailable evidence that Mbaye offers with her motion to reopen is the fact of a military *coup d'état* in Mauritania in early August 2008. In her appellate brief, she argues that "the newly entrenched military government in Mauritania has exhibited a callous indifference to human rights and freedoms and thus would likely persecute [Mbaye] for her political opinion." Although clearly previously unavailable, Mbaye does not demonstrate that the occurrence of the *coup* is material to her case. Mbaye's testimony and asylum applications do not attribute her alleged past persecution to her political opinions, but rather to her black Mauritanian ethnicity. In fact, she does not provide any evidence that she took part in political activism. She characterized Boolo as a women's group that promoted the education of girls. She described her activities in Boolo as teaching girls to read. The alleged detention and harassment that she allegedly suffered was due to a land claim, rather than due to her participation in Boolo. Moreover, she originally blamed the alleged killings of her father and brother on ethnic tensions, not to any political activism. That she varied her story slightly in her second application by attributing her brother's and father's killings to her activity with Boolo cannot provide new, material evidence because it "would have been previously available . . . inasmuch as [her] claim rests almost entirely on [her] own memory." *See Sunarto v. Mukasey*, 306 F. App'x 957, 962 (6th Cir. 2009).

Furthermore, an alien seeking "to reopen based on changed country conditions 'cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution.'" *Harchenko v. INS*,

379 F.3d 405, 410 (6th Cir. 2004) (quoting *Dokic v. INS*, No. 92-3592, 1993 WL 265166, at *4 (6th

Cir. July 15, 1993)); *see also Kalaj v. Mukasey*, 276 F. App'x 465, 467 (6th Cir. 2008) (finding that

"a random collection of Internet articles principally describing on-going political tension . . . along

with two country reports . . . describing both positive and negative developments . . . [provide]

nothing even remotely individualized"). Thus, for the August 2008 *coup* to be material to Mbaye's

case and warrant reopening of her asylum proceedings, Mbaye must demonstrate that the *coup*

presents a threat of persecution *to her*. However, Mbaye offers no evidence that the government

would target her specifically or that the government has targeted members of Boolo in the past. She

offers no evidence that the alleged detention and beating that she suffered was due to her political

beliefs or association with Boolo.[5] Rather, she presents evidence to the contrary: she maintained in

testimony and in her asylum applications that her ethnicity and refusal to relinquish her family's land

to a white Moor resulted in her alleged detention and rape. Therefore, she has not presented

evidence demonstrating that, because of the August 2008 *coup*, she is likely to be persecuted because

of her political beliefs. She also presents no evidence that the *coup* has resulted in a resurgence of

the land claims and ethnic violence of the early 1990s. Mbaye, therefore, has failed to demonstrate

that the new evidence is material and would alter the outcome of her case, and we hold that the BIA

did not abuse its discretion in so finding.

In addition to being a prerequisite for her motion to reopen, presentation of previously

unavailable, material evidence is also necessary for Mbaye to overcome the bar to successive

---

[5]Indeed, other than her own testimony, the only corroborating evidence of her membership in Boolo—or that Boolo exists—that Mbaye presents is an unsigned, unnotarized declaration from a person claiming to have known her in Mauritania and who stated that they both taught girls literacy. The person fails to reference Boolo or a women's organization. We have previously found that the lack of evidence of membership in the political organization that forms the basis of an alien's claim is not an improper grounds for denying an application for asylum. *See Allabani*, 402 F.3d at 674.

applications contained in 8 U.S.C. § 1158(2)(c). *See* 8 U.S.C. § 1158(a)(2)(D) (permitting a successive petition "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum."); *Zhang v. Mukasey*, 543 F.3d 851, 859 (6th Cir. 2008) (holding that "an alien [may] apply for asylum successively, based on any material changed conditions for 90 days after a final order of removal, but not thereafter"). Mbaye filed her motion to reopen and intent to submit a successive application within the ninety-day deadline and so need only demonstrate that material, changed circumstances warrant an exception to the general prohibition on successive asylum applications. *See* 8 U.S.C. § 1229a(c)(7)(C)(i), (ii) (stating that an alien must file a motion to reopen within ninety days of the order of removal becoming final); 8 C.F.R. § 1241.1(a) (mandating that an order of removal becomes final upon the dismissal of an appeal by the BIA). However, because we hold that Mbaye's motion to reopen presents no facts that, if proven, materially affect her eligibility, she cannot overcome the § 1158(2)(c) bar to successive petitions. The BIA, therefore, did not abuse its discretion in declining to review Mbaye's second application.

B.

Even if Mbaye had presented previously unavailable, material evidence, she failed to establish that she was "statutorily eligible for [the] relief [sought] prior to the entry of the administratively final order." 8 C.F.R. § 1003.2(c)(1); *see also Sako*, 434 F.3d at 862. In order to demonstrate statutory eligibility for asylum, and therefore a *prima facie* showing of eligibility for relief, an alien must establish that he is a refugee. 8 U.S.C. § 1158(b)(1)(A); 8 C.F.R. § 1208.13; *Alizoti v. Gonzales*, 477 F.3d 448, 452 (2007). "*Prima facie* evidence, according to the BIA, is evidence that 'reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'" *Alizoti*, 477 F.3d at 452 (quoting *Matter of S–V–*, 22 I. & N. Dec. 1306, 1308 (B.I.A.

2000)). The statutory definition of a refugee is a person unable or unwilling to return to his country of origin "because of [past] persecution or a well-founded fear of persecution on account of race, . . . membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also Sako*, 434 F.3d at 862.

Mbaye fails to demonstrate either past persecution or a well-founded fear of future persecution and, therefore, her motion to reopen must fail. *See Zhang*, 543 F.3d at 854 ("When a necessary element of her claim—whether she faced a risk of individual persecution—failed, so did her entire motion."). "To the extent [that Mbaye's] underlying asylum claim is based on past persecution, her claim is precluded by the IJ's previous adverse credibility determination." *Vakeesan*, 343 F. App'x at 124; *see also Zhang*, 543 F.3d at 855 (holding that the BIA did not abuse its discretion in taking into account the IJ's and BIA's prior, unrebutted adverse credibility determination in reviewing documentation submitted with a motion to reopen); *Abeshi*, 259 F. App'x at 778 (holding that the BIA did not abuse its discretion when it denied a motion to reopen because the petitioner failed to present new, material evidence or address a prior adverse credibility determination). Mbaye also fails to demonstrate a well-founded fear of future persecution because her claim relies entirely on her allegations of past persecution, which the IJ and BIA found to be incredible. Therefore, she cannot demonstrate that she faces "a reasonable probability of persecution" if returned to Mauritania. *See, e.g.*, *Vakeesan*, 343 F. App'x at 126 ("Absent the accounts of past persecution, the record is devoid of any evidence to suggest that [the petitioner] faces a reasonable possibility of being singled out individually for persecution." (citing *Zhang*, 543 F.3d at 854–55)).

Because Mbaye fails to demonstrate that she would be statutorily eligible for asylum based on the record and new evidence and did not present any previously unavailable evidence that is

material to her case, we conclude that "the new evidence offered would [not] likely change the result in the case." *Matter of Coelho*, 20 I. & N. Dec. at 473. Therefore, the BIA did not abuse its discretion in denying her motion to open and in declining to review her successive asylum application.

We also hold that the BIA did not abuse its discretion by not reviewing Mbaye's successive petition for withholding of removal and protection under the CAT. "An application seeking withholding of deportation faces a more stringent burden of proof than one for asylum," *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998), and, thus, "[a]n alien who fails to establish that she is a refugee eligible for asylum under 8 U.S.C. § 1158 will necessarily fail to satisfy the 'clear probability' requirement for a withholding of deportation claim," *Vakeesan*, 343 F. App'x at 120 n.5 (citing *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004)). Therefore, because the outcome of Mbaye's application for asylum would likely not differ from the IJ's and BIA's original determination, her motion to reopen proceedings with respect to withholding of removal and protection under the CAT also fails.

V.

For the foregoing reasons, we deny Mbaye's petition for review.