**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0674n.06

**Nos. 09-3698 and 10-3085**

|  |  |  |
|---|---|---|
| **UNITED STATES COURT OF APPEALS**<br>**FOR THE SIXTH CIRCUIT** | | **FILED**<br>**Nov 03, 2010**<br>LEONARD GREEN, Clerk |

ABDI OULD CHEIKH,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　　　　　　　　　　　)　　　ON PETITION FOR REVIEW
　　　　　　　　　　　　　　　　　　　　　　　　)　　　OF AN ORDER OF THE
　　　　　v.　　　　　　　　　　　　　　　　　　)　　　BOARD OF IMMIGRATION
　　　　　　　　　　　　　　　　　　　　　　　　)　　　APPEALS
ERIC H. HOLDER, JR., Attorney General,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)

BEFORE:　GILMAN and GRIFFIN, Circuit Judges; and ROSE, District Judge.[*]

　　　GRIFFIN, Circuit Judge.

　　　In these consolidated appeals, petitioner Abdi Ould Cheikh petitions for review of two separate orders of the Board of Immigration Appeals (the "BIA") denying his applications for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and voluntary departure, as well as his motion to reopen the case. For the reasons that follow, we deny Cheikh's petitions for review.

I.

　　　Abdi Ould Cheikh is a 40-year-old native and citizen of Mauritania, who entered the United States with a business visa on July 23, 2001, with authorization to remain in the United States until

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

October 22, 2001. On August 3, 2001, he filed an affirmative application for asylum, withholding of removal, and protection under the CAT, based on alleged persecution in Mauritania on account of his political opinion and membership in the United Democratic Forces ("UFD") Party. On December 21, 2001, the Immigration and Naturalization Service (now the Department of Homeland Security) served a Notice to Appear, charging Cheikh with removability pursuant to 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa. Removal proceedings were initiated, and Cheikh admitted the factual allegations and conceded the sole charge of removability. On January 31, 2007, following several continued removal hearings, a change of venue, and replacement of counsel, Cheikh submitted an amended application for asylum and related relief and testified in support of his application. He completed his testimony at a removal hearing on April 24, 2007.

Cheikh, with a wife and three children who currently reside in Mauritania, testified that in 1993, during his first year of college, he joined the UFD, which opposed the repressive military regime lead by then-president Ould Taya. His role in the UFD was to recruit new members and urge them to change the political and economic situation in Mauritania. Cheikh worked for the UFD for four years and testified that, although he possessed a UFD membership card, he did not bring it with him to the United States. The UFD was officially dissolved by the government in 1998.

Cheikh testified that he was arrested "one time" because of his UFD-related activities.[1]  The

arrest occurred in April 2001, when President Taya was scheduled to visit Cheikh's home province,

Boumdeid.  Cheikh spoke out against the government's misuse of funds collected from local citizens

to pay for the presidential visit.  As a result, he was taken into custody at his residence by uniformed

police officers and transported to the capital city of Nouakchott, where he was placed in a prison cell

and held for fifteen days.  The police accused him of opposing the government and selling weapons.

During his detention, Cheikh was allegedly deprived of food, water, and sleep, and forced to remain

standing.  Cheikh testified that the police beat him with their batons and fists about his head and

back, causing permanent damage to his hearing.  He estimated that one interrogation session lasted

for over nine hours.  Members of his tribe negotiated his release but, according to Cheikh, the police

continued to harass him about his political activities.  Cheikh decided that he must leave the country

for his own safety, and, in July 2001, he traveled to the United States.

In 2005, after Cheikh's departure, President Taya was ousted by a military coup.  In 2006,

members of the opposition Rally of Democratic Forces ("RFD") Party, led by former UFD leader

Ahmed Ould Daddah, won a number of parliamentary seats in the democratic elections that followed

the coup.  At the removal hearing, Cheikh acknowledged these events, but opined that the RFD

---

[1]In his amended asylum application, Cheikh described a second arrest that was not mentioned during his testimony at the removal hearing.  He claimed that in October or November 1998, he attended a demonstration protesting the government's resolution to dissolve the UFD Party.  The day after the demonstration, several policemen came to his home and forcibly took him to the police station, where they "interrogated and tortured" him for ten hours about his involvement in the UFD and then released him.

possessed little power and the political situation remained essentially unchanged from before the coup, with the military in firm control of the government. He expressed fear at the prospect of returning to Mauritania because "the democratic system . . . is not a real democra[cy]" and "the government . . . will recognize me, and the people that tortured me the first time, they are still . . . there."

Cheikh submitted documentary evidence in support of his claims, including the Amnesty International 2001 and 2005 Country Reports, and the 2006 State Department Country Report, which highlighted continuing human rights issues in Mauritania, including, inter alia, arbitrary arrests and detentions; restrictions on freedom of speech, the press, religion, and assembly; and a widespread public perception of governmental corruption. The IJ also accepted a proffer of testimony from one of Cheikh's colleagues, who corroborated Cheikh's membership in the UFD and his arrest in 2001.

The government, in turn, submitted eight news articles from 2006 and 2007, all of which reported that, following the bloodless military coup in 2005 and the ouster of President Taya, pro-democracy reforms were introduced and fair elections were held for the first time since 1960, resulting in a realignment of political parties. Ahmed Ould Daddah's RFD party was part of the Coalition of Forces for Democratic Change ("CFCD"), a group of parties that opposed Taya's rule and won some 40 percent of the parliamentary seats in the 2006 elections. (*Mauritania Opposition Asks AU to Ensure Free Poll,* GULF TIMES, Jan. 8, 2007, www.gulf-times.com). Daddah and other former opponents of the Taya regime hailed the election, with a turnout of 75 percent of the population and the approval by referendum of a new constitution, as a positive and historic change

in the political climate. (*Opposition Gains in Mauritania Elections*, AFROL NEWS, Nov. 23, 2006, www.afrol.com).

At the conclusion of the April 24, 2007, removal hearing, the IJ denied Cheikh's application for relief and protection under the CAT. The IJ found Cheikh to be "generally credible," but nonetheless concluded that Cheikh failed to meet his burden of demonstrating past persecution on account of his political opinion or any other protected ground. The IJ determined that Cheikh failed to produce several pieces of important and reasonably available corroboration, such as his UFD membership card and letters or affidavits from friends, family members, or fellow UFD party members, attesting to his political activities, arrests, and alleged mistreatment.

Moreover, even assuming Cheikh adequately proved past persecution, the IJ found that the government rebutted the presumption of a well-founded fear of future persecution by showing that conditions in Mauritania had fundamentally changed after 2005, such that any fear was no longer well-founded. The IJ noted that, despite certain human rights concerns, Mauritania had moved towards democracy with the ouster of President Taya in the 2005 bloodless coup and the 2006 elections that resulted in meaningful parliamentary representation for members of the former opposition.

Based on these findings, the IJ denied Cheikh's request for asylum. Because Cheikh failed to demonstrate eligibility for asylum, he necessarily failed to meet the higher burden of proof for withholding of removal. The IJ also denied relief under the CAT and found that Cheikh was statutorily ineligible for voluntary departure.

Cheikh appealed to the BIA, challenging the IJ's findings that he had failed to sufficiently corroborate his claim of past persecution and that the government had rebutted any presumption of a well-founded fear of future persecution. The BIA dismissed the appeal, holding in pertinent part:

> We agree with the [IJ] that, even if [Cheikh] had experienced past persecution in Mauritania, he does not have a well-founded fear of future persecution because the [DHS] has sufficiently demonstrated a fundamental change in country conditions in Mauritania. 8 C.F.R. § 1208.13(b)(1). Because the DHS met this burden, we need not address the question of whether or not [Cheikh] suffered past persecution in his home country. As the [IJ] noted, the government that [Cheikh] opposed in Mauritania is no longer in power, and despite continuing human rights challenges, the country is making democratic progress. *See* Exh. 5, Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, "*Mauritania Country Reports on Human Rights Practices – March 2006*." Most relevant to [Cheikh's] claim are the Country Report's statements that there were "no reports of political prisoners or detainees during the year," and that the transitional government met its time line for democratic elections. *Id.* Moreover, the leader of [Cheikh's] former party actually participated in the election and won parliamentary representation. *See* Tr. at 97; Exh. 6. Accordingly, [Cheikh] has not met his burden of proof with respect to his political opinion-based claim for asylum.

The BIA also affirmed, without elaboration, the IJ's determination that Cheikh was ineligible for withholding of removal, CAT protection, and voluntary departure. Cheikh filed a timely petition for review with this court.

On July 17, 2009, Cheikh moved the BIA to reopen his case, asserting that a change in circumstances in Mauritania warranted reopening the proceedings. Specifically, Cheikh cited events in August 2008, during which members of the Mauritanian military ousted the elected president in a bloodless coup and seized control of the government. Various news articles[2] reported that the 2008

---

[2]The documents included: three Amnesty International press releases; a State Department press release; two internet articles; two BBC news articles; and an Amnesty International report on

coup, which was condemned by the international community, caused instability and a deterioration

in country conditions. The BIA, however, denied Cheikh's motion to reopen, reasoning that

> [n]otwithstanding the recent developments in Mauritania, [Cheikh] has not
> demonstrated how these changed country conditions would materially affect the
> outcome of his proceedings. The [IJ] and this Board found that [Cheikh] had failed
> to carry his burden of demonstrating eligibility for relief, [] and [Cheikh] has neither
> addressed the deficiencies in his original claim, nor articulated how the recent events
> would affect his claim. [Cheikh's] brief merely re-states the fact that he is a member
> of the UFD political party, and states that "the possibility that (he) would be
> persecuted, imprisoned, killed, and/or tortured has increased substantially since the
> coup." Without more, we do not find that [Cheikh] has carried the "heavy burden"
> which would warrant a reopening of his record. [*Matter of Coelho*, 20 I & N Dec.
> 464 (BIA 1992)]. Accordingly, [Cheikh's] motion to reopen will be denied.

Cheikh's timely petition for review of the BIA's order denying his motion to reopen was

consolidated with his earlier petition for review by this court.

## II.

Cheikh first argues that substantial evidence does not support the IJ's and BIA's findings that

the government met its burden of proving changed country conditions in Mauritania after the 2005

coup so as to rebut the presumption of a well-founded fear of future persecution. Cheikh contends

that the IJ and BIA ignored evidence indicating that even after the 2005 coup, the Mauritanian police

continued to arrest, beat, and torture political opponents of the government.

"Where the BIA reviews the immigration judge's decision and issues a separate opinion,

rather than summarily affirming the immigration judge's decision, we review the BIA's decision as

the final agency determination. To the extent the BIA adopted the immigration judge's reasoning,

---

torture in Mauritania.

however, [we] also review[] the immigration judge's decision." *Khalil v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citation omitted). We review issues of law de novo and evaluate the factual findings of the IJ and the BIA using the substantial-evidence standard. *Id.* Under this highly deferential standard, "[t]hese findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id*. (quoting 8 U.S.C. § 1252(b)(4)(B)) (citation and internal quotation marks omitted).

In order to be eligible for asylum, an alien must first prove that he is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A) – one who is unable or unwilling to return to his native country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*.; *see also Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1150 (6th Cir. 2010). He must then persuade the Attorney General to exercise his discretion and grant relief under 8 U.S.C. § 1158(b). *Cruz-Samayoa*, 607 F.3d at 1150-51.

"'Persecution' entails punishment or the infliction of suffering or harm, but harassment or discrimination without more does not rise to the level of persecution." *Sako v. Gonzales*, 434 F.3d 857, 862 (6th Cir. 2006) (internal quotation marks and citation omitted). "[C]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (internal quotation marks and citation omitted). "The feared persecution must relate to the alien individually, not to the population generally." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (citation omitted).

An alien who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1)(i). But the government may rebut the presumption if it shows, by a preponderance of the evidence, that

> conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted upon return. The [government] must do more than show that circumstances in the country have fundamentally changed; [it] must also show that such change negates the particular applicant's well-founded fear of persecution.

*Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003) (citations omitted); *see also* 8 C.F.R. § 208.13(b)(1)(i)(A). "Country Reports and Asylum Profiles may constitute substantial evidence supporting agency decisions denying asylum on the basis of fundamentally changed country conditions." *Bary v. Holder*, 332 F. App'x 263, 267 (6th Cir. 2009).

If the government successfully rebuts the presumption, an alien must then demonstrate a well-founded fear of future persecution notwithstanding the changed country conditions. *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007). "A well-founded fear of future persecution has both a subjective and an objective component." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (citation omitted). "An applicant must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable." *Id*. at 283 (internal quotation marks and citation omitted).

"A well-founded fear of future persecution can be based either on a likelihood of harm specifically targeted at the applicant or a pattern or practice of harm to others similarly situated." *Camara v. Holder*, 349 F. App'x 86, 91 (6th Cir. 2009). "Because a well-founded fear of

persecution can be based upon what has happened to others who are similarly situated, it is necessary, in considering an applicant's asylum petition, to weigh evidence of general conditions in the country of origin and the foreign government's history of treatment of others engaged in similar activities." *Ali v. Ashcroft*, 366 F.3d 407, 411 (6th Cir. 2004) (internal quotation marks and citation omitted).

In *Ly v. Holder*, No. 09-3545, 2010 WL 3724607 (6th Cir. Sept. 16, 2010) (unpublished), we observed that this court "[has] recently upheld findings in several cases that the changed country conditions in Mauritania [after the 2005 coup] reduce any objective fear of future persecution." 2010 WL 3724607, at *6 (citing *Koita v. Mukasey*, 314 F. App'x 839, 843-44 (6th Cir. 2009); *Sy v. Mukasey*, 278 F. App'x 473, 476 (6th Cir. 2008); *Sall v. Gonzales*, 239 F. App'x 975, 981 (6th Cir. 2007)). *See also Mbodj v. Holder*, No. 08-3165, 2010 WL 3521932, at *4 (6th Cir. Aug. 31, 2010) (unpublished); *Ly v. Holder*, 376 F. App'x 512, 518 (6th Cir. 2010).

In these cases, we have considered and rejected arguments similar to those made by Cheikh – that post-2005 changes in Mauritania's government are merely "cosmetic" in nature and that country conditions remain essentially unchanged and pose particular dangers for former members of the opposition parties. *See, e.g.*, *Sy*, 278 F. App'x at 476 (holding that former UFD member who had been imprisoned did not have a well-founded fear of future persecution because "[o]n balance, . . . substantial evidence supports more than a sham change of power.").

The present circumstances do not compel a different result. Substantial evidence supports the BIA's finding that conditions in Mauritania fundamentally changed after 2005, negating

petitioner's fear of future persecution should he return to his native country.  President Taya was

removed, free elections were held, meaningful parliamentary representation was gained by the

opposition coalition, and there were no reports of political prisoners or detainees following the

bloodless coup.  Cheikh failed to counter this evidence by showing with specificity that he,

individually, had an objective basis to fear persecution or torture, on account of his political

involvement with the now-defunct UFD, upon his return to Mauritania.  The BIA therefore properly

denied his claims for relief on the basis of fundamentally changed circumstances.

III.

In his second petition for review, Cheikh challenges the BIA's denial of his motion to reopen.

Cheikh argues that the 2008 coup in Mauritania has caused the country to revert to its pre-2005 state,

thereby undoing the democratic progress that formed the basis for the BIA's denial of his

applications for relief.

We review the BIA's denial of a motion to reopen for an abuse of discretion.  *Acquaah v.*

*Holder*, 589 F.3d 332, 334 (6th Cir. 2009); *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009).

An abuse of discretion exists where the BIA's denial of a motion to reopen was made without

rational explanation, inexplicably departed from established policies, or rested on an impermissible

basis such as invidious discrimination against a particular race or group.  *Bi Feng Liu*, 560 F.3d at

490.  The BIA is accorded "broad discretion" and "great deference" in granting or denying a motion

to reopen, so as to bring closure to the proceedings.  *Id.*

An alien filing a motion to reopen based on changed country conditions "bears a heavy burden" and "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Harchenko*, 379 F.3d at 410 (internal quotation marks and citation omitted).

As the BIA correctly determined, Cheikh has not provided this requisite specific proof to warrant reopening the case. He vaguely argues that "the coup put Mauritania back into the same position that it had been when [he] was living there: a brutal, paranoid regime ruled by a dictator" and surmises that given his status as a "known political activist," "it is logical that a member of the opposition who has been targeted in the past will be imprisoned and tortured again if he is deported to Mauritania." This generalized contention provides insufficient grounds to reopen the proceedings.

In *Mbaye v. Holder*, 369 F. App'x 688 (6th Cir. 2010), we held that the BIA did not abuse its discretion in denying the Mauritanian petitioner's motion to reopen the record:

> [F]or the August 2008 *coup* to be material to Mbaye's case and warrant reopening of her asylum proceedings, Mbaye must demonstrate that the *coup* presents a threat of persecution to *her*. However, Mbaye offers no evidence that the government would target her specifically or that the government has targeted members of Boolo [a women's group] in the past. . . . [S]he has not presented evidence demonstrating that, because of the August 2008 *coup*, she is likely to be persecuted because of her political beliefs. . . . Mbaye, therefore, has failed to demonstrate that the new evidence is material and would alter the outcome of her case, and we hold that the BIA did not abuse its discretion in so finding.

*Mbaye*, 369 F. App'x at 695-96. *See also Koita v. Holder*, No. 09-3772, 2010 WL 3119522, at *2-3 (6th Cir. Aug. 6, 2010) (unpublished) (holding that the BIA did not abuse its discretion in denying a motion to reopen where the Mauritanian petitioner, who sought asylum on account of his political

opinion, failed to show that the 2008 coup presented a threat of future harm to him individually or resulted in the targeting of individuals similarly situated to him).

The record reflects that conditions in Mauritania are fluid. However, given the dearth of "reasonably specific information showing a real threat of individual persecution," *Harchenko*, 379 F.3d at 410, we conclude that the BIA did not abuse its discretion in denying Cheikh's motion to reopen.[3]

IV.

For the above reasons, we deny Cheikh's petitions for review.

---

[3]Cheikh's additional claim that the BIA, in its order denying his motion to reopen, erred in its reference to and treatment of the corroboration issue is without merit.