RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

BI FENG LIU,

                    *Petitioner,*

      *v.*

ERIC H. HOLDER, JR., Attorney General,

                    *Respondent.*

No. 07-4359

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
No. A79 424 638.

Argued: January 13, 2008

Decided and Filed: March 24, 2009

Before: SUHRHEINRICH, GILMAN, and WHITE, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Oleh R. Tustaniwsky, HUALIAN LAW OFFICES, New York, New York, for Petitioner. Nicole N. Murley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Oleh R. Tustaniwsky, HUALIAN LAW OFFICES, New York, New York, for Petitioner. Nehal H. Kamani, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

————————————

**OPINION**

————————————

SUHRHEINRICH, Circuit Judge. Bi Feng Liu, a native and citizen of China, was ordered removed by an Immigration Judge (IJ). He subsequently filed a motion to reopen proceedings based upon changed country conditions and changed personal conditions. The IJ denied Liu's motion, and the Board of Immigration Appeals (BIA) affirmed the IJ's denial of the motion without a hearing. Liu petitions for review of the BIA's decision, arguing that the BIA (1) abused its discretion in finding that he failed to show changed country

1

conditions, (2) erred in determining that Liu was ineligible to file a successive asylum application based upon changed personal circumstances, and (3) erred in failing to consider whether Liu qualified for relief under the Convention Against Torture.  Because the BIA acted within its discretion, we **DENY** Liu's petition for review.

## I.  Background

Liu was born on July 21, 1977, in the Fujian Province of China.  Liu claims that his fiancé became pregnant in 2001, but they were unable to register their marriage because she had not reached the legal marital age.  Chinese officials began "pursuing" Liu because of his violation of birth-control policy, and he departed China and gained admission into the United States without valid documentation on October 29, 2001.

On March 1, 2004, the Department of Homeland Security lodged a Notice to Appear with the Executive Office of Immigration Review in Miami, Florida, charging Liu as entering the United States without valid entry documents and, thus, subject to removal under § 212(a)(7)(A)(i)(I) of the Immigration and Naturalization Act (INA).  Three weeks later, Liu successfully moved to change venue to New York City.  Between May 20, 2004, and March 3, 2005, Liu appeared before an IJ in New York six times requesting more time to find an attorney or to file applications for relief.  Liu also requested another change of venue, this time to Memphis.  On March 3, 2005, the IJ in New York entered an order changing venue to Memphis.

A master calendar hearing was eventually scheduled for June 29, 2005, in Memphis, Tennessee.[1]  Shortly before the hearing, on June 10, 2005, Liu moved yet again to change venue from Memphis back to New York.  The IJ in Memphis denied that motion,

---

[1]The BIA has previously explained:

> Neither the [INA] nor the regulations define a "master calendar hearing."  However, we understand such a hearing to be a preliminary stage of proceedings at which, even though little or no testimony is taken, the Immigration Judge has great flexibility to identify issues, make preliminary determinations of possible eligibility for relief, resolve uncontested matters, and schedule further hearings.  In addition, this is the stage of the proceedings at which the Immigration Judge generally ensures that an alien has been advised of his or her rights under the [INA] and applicable regulations, including rights to apply for relief, and has been given notice and warnings regarding his or her obligation to attend future hearings, file applications and evidence in a timely manner, and otherwise cooperate with orders of the Immigration Court.

*Matter of Cordova*, 22 I. & N. Dec. 966, 968 (B.I.A. 1999).

reasoning in part that Liu appeared to be forum shopping. Liu failed to appear at his June 29 hearing, and the IJ issued an *in absentia* order of removal against Liu.[2] In the order, the IJ noted that Liu had admitted the factual allegations contained in his Notice to Appear and had conceded his removability in one of his earlier motions to change venue. Liu never challenged the *in absentia* order and did not move to reopen proceedings at that time.

Instead, in August 2006–over one year after he was ordered removed from the United States–Liu joined the China Democratic Party (CDP) in New York and began participating in CDP meetings and protest rallies.[3] On December 6, 2006, Liu filed a motion to reopen his removal proceedings before the immigration court. To get around the 90-day filing requirement for motions to reopen, Liu asserted both that his personal conditions had changed based upon his activities with the CDP and that conditions had changed in China as a result of that government's increased control over the Internet and traditional media. *See* 8 U.S.C. §§ 1229a(c)(7)(C)(i), (ii) (providing that motions to reopen must be filed within 90 days of a final order of removal but that no deadline applies if, *inter alia*, the motion to reopen is based upon changed conditions in the country to which removal has been ordered). In support of his assertion that his personal circumstances had changed, Liu appended to his motion to reopen his own sworn affidavit, evidence of his involvement with the CDP in New York, and two articles that he allegedly published on the CDP website. To support his argument that conditions had changed in China, Liu cited the recent arrests of Chinese dissidents who published political opinion on the Internet, articles chronicling the treatment of Chinese dissidents, a translation of a new Chinese law titled "Measures for Administering the Release of News and Information in China by Foreign News Agencies," and two pages from the U.S. Department of State's "2005 Country Reports on Human Rights Practices" in China, which, *inter alia*, explained that CDP members in China had been imprisoned.

[2] Pursuant to § 240(b)(5)(A) of the INA, "[a]ny alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia . . . ." 8 U.S.C. § 1229a(b)(5)(A).

[3] The CDP is "an organization that opposes the Communist Party leadership in China and promotes democracy." *Zhou v. Att'y Gen.*, No. 07-3726, 2009 WL 27437, at *1 (3d Cir. Jan. 6, 2009).

Liu failed to append an application for asylum or any other form of relief to his motion to reopen, however.  *See* 8 C.F.R. § 1003.23(b)(3) (explaining that a motion to reopen must be accompanied by the appropriate application for relief and all supporting documentation).

On December 18, 2006, the IJ denied the motion to reopen, finding that Liu's evidence failed to establish changed country conditions that would excuse his untimely filing of the motion to reopen.  The IJ also cited three other reasons for denying Liu's motion:   (1) Liu did not satisfy the procedural requirements of 8 C.F.R. § 1003.23(b)(4)(ii) because he failed to demonstrate that evidence of purported changed country conditions was unavailable at the June 29, 2005 hearing, which Liu did not attend; (2) Liu's motion was another attempt to "manipulate the system" and did not, in the IJ's discretion, warrant reopening; and (3) Liu's failure to attach an application for asylum to his motion constituted a failure to demonstrate *prima facie* eligibility for asylum.

Liu appealed the IJ's denial of his motion to reopen to the BIA.  Liu also sought a remand order from the BIA so that he could submit the asylum application that he had omitted from his earlier motion to reopen.

On October 12, 2007, the BIA dismissed Liu's appeal.  The BIA first addressed Liu's evidence of his participation in CDP activities and concluded that such evidence demonstrated a change in personal circumstances but did not qualify as a change in country conditions sufficient to warrant reopening his proceedings.  Second, the BIA held that, pursuant to 8 C.F.R. § 1003.23(b)(3), Liu's failure to submit an asylum application with his motion to reopen precluded reopening his removal proceedings.

Third, the BIA held that Liu's remaining evidence did not establish changed country conditions.  Though the BIA did not specifically address the country report and its findings of arrests of CDP members, the BIA found "no evidence that anyone in China is aware of [Liu's] alleged membership in, and activities in support of, the CDP." The BIA searched–unsuccessfully–for Liu's articles on the Internet.  Even if the articles existed, the BIA found "no evidence that anyone in China is aware of these articles [or

has] any inclination and ability to harm the respondent in any way because of them." The BIA also examined the new Chinese law Liu had cited and concluded that it only applied "to the release of news and information 'in China by foreign news agencies.'" Because Liu's articles were not published in China by Liu or a foreign news agency, the BIA determined that Liu's actions did not fall within the ambit of such law. Additionally, the BIA pointed out that Liu's evidence of the arrest of Chinese dissidents did not suggest that those dissidents were prosecuted pursuant to the new law. Thus, the BIA found that Liu's evidence failed to demonstrate a changed country condition or a well-founded fear of persecution if he returned to China.

The BIA also denied Liu's motion for remand. The BIA reasoned that because the requirements for a motion to remand are essentially the same as a motion to reopen, the motion to remand was number barred under 8 C.F.R. § 1003.2(c)(2), which allows only one motion to reopen before the IJ or the BIA.[4]  The BIA also found that the motion to remand did not seek to introduce "previously unavailable" evidence but rather averred that Liu's counsel had erred by failing to include the application with the prior motion. Accordingly, the BIA noted that the instant motion suggested ineffectiveness of counsel and required compliance with the procedures set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988), but that Liu failed to comply with those requirements. In any event, because Liu failed to demonstrate changed country conditions warranting reopening of his removal proceedings, the BIA noted that Liu could not show the requisite prejudice to support a claim of alleged ineffectiveness of counsel.

---

[4]In his petition to this Court, Liu does not challenge the BIA's denial of his motion to remand as number-barred. As the Government argues before this Court, an issue that is not raised in a party's briefs may generally be deemed waived. *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002). For completeness, we note that the BIA's treatment of Liu's purported motion to remand as equivalent to a motion to reopen is supported by Sixth Circuit precedent. *See Ahmed v. Mukasey*, 519 F.3d 579, 586 n.7 (6th Cir. 2008) (noting that motions to remand or to reopen immigration matters are generally treated the same); *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007) (same); *Pilica v. Ashcroft*, 388 F.3d 941, 945 n.3 (6th Cir. 2004) (same); *Ghareeb v. Ashcroft*, 110 F. App'x 657, 659 (6th Cir. 2004) ("The BIA . . . will characterize a motion to remand as a motion to reopen if the movant requests additional proceedings to present evidence not available during the initial proceedings.") (citing *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (B.I.A. 1992)).

## II.  Analysis

### A.  Jurisdiction

This Court has jurisdiction to review final orders of removal that have been timely appealed.  8 U.S.C. § 1252(a)(1).  An order of removal becomes final upon the dismissal of an appeal by the BIA.  8 C.F.R. § 1241.1(a); *Prekaj v. I.N.S.*, 384 F.3d 265, 268 (6th Cir. 2004).  By statute, an alien seeking review of a final order of the BIA must file a petition for review not later than 30 days after the date of the final order of removal.  8 U.S.C. § 1252(b)(1).  The BIA issued its decision on October 12, 2007, and Liu timely filed his petition to this Court on November 9, 2007.

### B.  Standard of Review

The BIA has "broad discretion" to grant or deny a motion to reopen.  *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992).  Therefore, we review the BIA's denial of a motion to reopen for abuse of discretion.  *Id.*; *Harchenko v. I.N.S.*, 379 F.3d 405, 409 (6th Cir. 2004).  The Supreme Court expressed why appellate courts give great deference to the BIA's denials of motions to reopen: "There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *I.N.S. v. Abudu*, 485 U.S. 94, 107 (1988).  Indeed, "If [the BIA's] discretion is to mean anything, it must be that the [BIA] has some latitude in deciding when to reopen a case. . . .  Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *Id.* at 108 (quoting *I.N.S. v. Wang*, 450 U.S. 139, 143 n.5 (1981) (per curiam)).

This Court will find an abuse of discretion if the denial of the motion to reopen "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005).  Where "the BIA expressly adopts and affirms the IJ's decision but adds comments of its

own, we directly review the decision of the IJ while also considering the additional comments made by the [BIA]." *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007). We review legal determinations made by the BIA de novo. *Harchenko*, 379 F.3d at 409.

### C.  Relevant Legal Framework

Section 240(c)(7) of the INA, 8 U.S.C. § 1229a(c)(7), applies where an alien who was previously ordered removed from the United States seeks to reopen his removal proceedings.  It provides, in part, that "[a]n alien may file one motion to reopen proceedings under this section."  8 U.S.C. § 1229a(c)(7)(A).  Generally, the motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal.  8 U.S.C. § 1229a(c)(7)(i).  However, that 90-day deadline does not apply if, *inter alia*, the purpose of the motion to reopen is to apply for asylum relief pursuant to 8 U.S.C. § 1158(a) and is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(ii).

Section 1158(a), in turn, provides the authority for an alien to file for asylum. 8 U.S.C. § 1158(a)(1).  Generally, an alien must file his asylum application within one year after arriving in the United States and may not file another application if his first is rejected.  8 U.S.C. §§ 1158(a)(2)(B), (C).  However, an exception exists to both the one-year deadline and the prohibition on refiling after an asylum application has been denied "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B)."  8 U.S.C. § 1158(a)(2)(D).

Although Title 8 does not specifically address how these statutes operate where an alien under an order of removal for more than 90 days seeks asylum relief, this Court has held that if such an alien wishes to apply for asylum, the asylum application must be coupled with a motion to reopen supported by changed country conditions satisfying

8 U.S.C. § 1229a(c)(7)(C)(ii).  *See Zhang v. Mukasey*, 543 F.3d 851, 857-58 (6th Cir. 2008).

### D.  Motion to Reopen

With this framework in hand, we first consider the BIA's denial of Liu's motion to reopen.  Neither party disputes that Liu's motion to reopen was filed roughly 18 months after the IJ's removal order became final.  Therefore, Liu's motion must satisfy the exception to the general 90-day filing requirement.  *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i) (stating that the 90-day deadline for filing motions to reopen does not apply if the basis of the motion is to apply for asylum or withholding of removal pursuant to INA § 241(b)(3) or the Convention Against Torture and "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding"); *see also* 8 C.F.R. § 1003.23(b)(3)  (stating that "[a]ny motion to reopen for the purpose of acting on an application for relief must be accompanied by the appropriate application for relief and all supporting documents").

Substantial evidence supports the BIA's finding that Liu failed to satisfy the timeliness exception for filing motions to reopen based upon changed country conditions.  First, Liu failed to comply with the procedural requirements for filing a motion to reopen.  As noted by both the IJ and the BIA, Liu did not append an application for asylum to his motion to reopen as mandated by 8 C.F.R. § 1003.23(b)(3). Therefore, Liu's motion to reopen is, at a minimum, procedurally defaulted. *See Tapia-Martinez v. Gonzales*, 142 F. App'x 882, 884-85 (6th Cir. 2005) (denying alien's petition for review where her motion to reopen was not supported with a copy of the application for relief requested).

Second, Liu failed to demonstrate that the evidence he sought to offer was unavailable at the prior hearing.  "In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, [the BIA] compare[s] the evidence of country conditions submitted with the

motion to those that existed at the time of the merits hearing below." *Matter of S-Y-G*, 24 I. & N. Dec. 247, 253 (B.I.A. 2007). Liu appended to his motion to reopen several articles chronicling Chinese dissidents, but he did not present comparison of the country conditions from the time between his removal order in June 2005 and his motion to reopen in December 2006. Indeed, much of the evidence presented in the English-language exhibits was dated before 2005 (the year in which the IJ issued the *in absentia* order of removal) and reported events leading to arrests of dissidents during the years 2001-2003. Although three of the English-language articles were apparently published in 2006 and reported arrests of Chinese dissidents for "subversion" and other offenses, Liu failed to establish that any change in the law or country conditions between 2005 and 2006 formed the basis for those arrests.

Liu also attempted to show changed country conditions by citing to an excerpt from the 2005 State Department Country Reports on China.[5] That country report, however, portrayed conditions in China as relatively constant. As the report noted, "The government's human rights record remained poor, and the [Chinese] government continued to commit numerous and serious abuses." While the report mentioned a general trend of "increased harassment, detention, and imprisonment by government and security authorities of those perceived as threatening to government authority," the section of the report referring specifically to the CDP did not mention any increase in arrests of CDP members. Instead, the report explained that "[m]ore than 40 current or former CDP members remained imprisoned or held in reeducation-through-labor camps." As such, the report demonstrates that the Chinese government remained consistent in its policies regarding political parties like the CDP. Moreover, the 2005 Country Report did not cover the relevant time period, namely June 2005 through

---

[5]The BIA did not specifically mention the 2005 State Department Country Reports in its decision. We note that the BIA "owed no duty to rehearse" all of Liu's evidence for the sake of completeness so long as the BIA analyzed and explained the basis upon which it decided against Liu. *See Zhang*, 543 F3.d at 855; *see also Toussaint v. Att'y Gen.*, 455 F.3d 409, 416-417 (3d Cir. 2006) (holding that the BIA's failure to specifically mention the Country Reports does not automatically render its decision an abuse of discretion where the record demonstrated that the BIA considered the country reports and articles as background evidence). Here, the BIA adequately explained its reasoning in its opinion, allowing us meaningful review.

December 2006. Accordingly, the report failed to support Liu's claim of changed country conditions.

Finally, as the BIA stated, Liu's remaining evidence, which depicted his membership and participation in the CDP and its activities in the United States, demonstrated a change in Liu's personal circumstances but did not demonstrate changed country conditions in China. Without evidence of changed country conditions, however, Liu's evidence of changed personal circumstances is insufficient to warrant reopening proceedings. *See Niyibizi v. Mukasey*, No. 07-3805, 2008 WL 4889008, at *2 (6th Cir. Nov. 6, 2008) ("Evidence of changes in personal circumstances, not accompanied by a change in country conditions, is not sufficient to support an untimely motion to reopen.").

### E. Asylum

Having concluded that the BIA acted within its discretion in denying Liu's motion to reopen, we next address whether the BIA abused its discretion in failing to consider Liu's application for asylum. We hold that the BIA properly denied Liu's request for asylum relief.

Liu argues that his involvement in CDP activities after his initial order of removal satisfies the "changed circumstances" requirement of 8 U.S.C. § 1158(a)(2)(D) and, thus, the BIA should have considered his asylum application.[6] This case is analogous to *Zhang*, where we held that an alien under a final order of removal for more than 90 days may not use the "changed circumstances" standard of 8 U.S.C. § 1158(a)(2)(D) as an avenue for applying for asylum without first satisfying the

---

[6]We note that the record is unclear as to how many asylum applications Liu has filed. In their briefs to this Court, Liu and the Government characterize the application for asylum included with Liu's motion to the BIA for a remand order as a "successive" asylum application. The IJ, however, explained in his order denying Petitioner's motion to reopen that the "Department of Homeland Security did not refer an I-589 application for asylum to the Miami Immigration Court" and that "[t]here is no I-589 [application for asylum] in the Record of Proceedings, contrary to the representations in the motion to reopen." Whether Liu has previously applied for asylum relief does not affect our holding that Liu may not now apply for asylum relief without successfully moving to reopen proceedings. *See Matter of C-W-L*, 24 I. & N. Dec. 346, 354 (B.I.A. 2007) ("Neither the Board nor the Immigration Judge has jurisdiction to consider a new asylum claim in proceedings that are administratively final and where the standards for reopening are not satisfied.")

requirements for a motion to reopen based upon changed country conditions pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii).  *Zhang*, 543 F.3d at 859.

In *Zhang*, a Chinese citizen was detained upon arrival to the United States and requested asylum.  The IJ found her not credible and denied relief.  The BIA affirmed, making the removal order final.  Zhang remained in the United States and gave birth to two children. Zhang later filed a "Motion to Reopen and Successive Asylum Application," arguing both that her proceedings should be reopened pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii), based upon changed country conditions in China, and also that the birth of her two children supported her application for asylum pursuant to the "changed conditions" standard of 8 U.S.C. § 1158(a)(2)(D).

The *Zhang* Court disagreed that the two statutory provisions provided separate avenues of relief, holding that 90 days after an alien becomes subject to a final order of removal, if the alien wishes to seek asylum relief, the asylum application must be coupled with a motion to reopen supported by changed country conditions. *Zhang*, 543 F.3d at 859.  The Court reasoned that § 1158(a)(2)(D)'s exception to the time and number limitations on applications for asylum does not apply to aliens under final orders of removal once the 90-day period for reopening has expired.  Because the "changed circumstances" standard of 8 U.S.C. § 1158(a)(2)(D) includes circumstances within the control of the alien, *Zhang*, 543 F.3d at 859, extending the application of that standard beyond the 90-day period for seeking to reopen a removal proceeding would lead to the result that an alien under an order of removal may apply and reapply for asylum based upon *any* changed circumstances, including those of the alien's own making.  *See id*. at 858-59.  Indeed, if the "alien could 'completely bypass the more stringent procedural requirements for a motion to reopen by filing a successive asylum application . . . neither 1229a(c)(7)(C)'s ninety-day deadline nor its exception . . . would ever apply, even after the entry of a final order of removal.'" *Id.* at 858 (quoting *Jin v. Mukasey*, 538 F.3d 143, 156 (2d Cir. 2008)). Such a result would nullify the finality of removal proceedings and "permit[] an alien to manufacture a more perfect asylum application while living illegally in the United States."  543 F.3d at 859.

Liu's time in this country reflects a similar attempt to manufacture a more perfect asylum application while living illegally in the United States. From the start, Liu repeatedly attempted to stall his removal proceedings, appearing before an IJ on six different occasions beginning in 2004, each time asking for more time to find an attorney or to file applications for relief, but never actually filing an application for relief or seriously seeking counsel. Liu also engaged in forum shopping, making repeated requests to change venue. Liu failed to appear for his evidentiary hearing and never challenged the resulting *in absentia* order of removal. Instead, Liu remained illegally in the United States. Then, almost five years after he entered the United States and over a year after being ordered removed, Liu joined the CDP in New York and wrote two articles criticizing China. Finally, eighteen months after his removal order, Liu moved to reopen his removal proceedings, hoping that his two articles and participation in CDP activities would provide the changed circumstances necessary for Liu to be granted asylum. As such, Liu is exactly the type of alien that the *Zhang* Court cautioned against giving "'a second and third bite at the apple,'" *Zhang*, 543 F.3d at 859 (quoting with approval the Second Circuit's decision in *Wang v. B.I.A.*, 437 F.3d 270, 274 (2d Cir. 2006)), simply because he managed to evade authorities and attempted to change his circumstances to resemble an asylum applicant under a legitimate fear of persecution.

### F. Convention Against Torture

Liu's final argument is that the BIA failed to consider whether he qualified for relief under the Convention Against Torture. Liu did not raise the issue of CAT to the BIA. Indeed, the words Convention Against Torture or the CAT acronym do not appear in his brief to the BIA or in his motion to remand. Because Liu has not exhausted this claim to the BIA, this Court lacks jurisdiction to hear it. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right . . . ."); *Hasan v. Ashcroft*, 397 F.3d 417, 419-20 (6th Cir. 2005) (holding that this Court lacked jurisdiction to review a denial of protection under CAT where the alien did not raise the issue to the BIA); *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (finding that the Court lacked jurisdiction

to consider whether aliens may be eligible for asylum on humanitarian grounds where aliens failed to raise the issue before the BIA); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (holding "that only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal").

### III.  Conclusion

Based upon the foregoing analysis, we find no abuse of discretion and, accordingly, **DENY** Liu's petition for review.