NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0286n.06

Case No. 13-3662

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANVAR KAMILEVICH MALIANCHINOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE: COLE and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

SUTTON, Circuit Judge. Anvar Malianchinov, a citizen and native of Kyrgyzstan, came to the United States in 2008 and applied for asylum and withholding of removal in 2009. Malianchinov is Dungan, an ethnic minority in Kyrgyzstan, and he fears persecution in his home country owing to this ethnicity. The Board of Immigration Appeals found several problems with Malianchinov's story, however, and rejected his claims. We find the same problems (and a few more) and deny his petition for review.

As Malianchinov tells it, his life in Kyrgyzstan was punctuated by three instances of ethnic persecution. The first happened in 2004, on a ski trip with friends. A Kyrgyz man

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

approached Malianchinov and asked to borrow his skis. When Malianchinov refused, the man called him Dungan "trash" and pushed him down, causing an injury to his rib. AR 184–91. Malianchinov reported this incident to the police, who said they would "handle it"—though he never heard anything more about the investigation. *Id.* at 186–88.

Malianchinov says he was next attacked in a park in 2005. While walking with a group of friends, several Kyrgyz men asked him for cigarettes and money. He refused to give anything to the men, who then used "bad words" about Dungans, hit Malianchinov in the head and kicked him when he fell down. *Id.* at 195–97. Malianchinov spent some time in a hospital, and the police visited him to take a written report. Nothing came of this investigation either.

Finally, in 2006, unknown assailants attacked Malianchinov again. While walking home from a party, two men punched him in his kidney, called him "Dungan trash," searched his pockets and took his wallet and cell phone. *Id.* at 204–06. He reported this incident to the police, who told him that they would do everything in their power to find the attackers. The police later cancelled the investigation, however, because they could not identify Malianchinov's assailants.

After hearing this story, an immigration judge denied Malianchinov's asylum and withholding-of-removal claims. The Board of Immigration Appeals adopted the judge's reasons (and added its own) before dismissing Malianchinov's case and allowing him to depart voluntarily from the United States.

We see no reason to second guess the Board's decision. To be eligible for asylum, Malianchinov must prove that he is unable or unwilling to return to Kyrgyzstan because of either

past persecution or a well-founded fear of future persecution on account of his ethnicity. 8 U.S.C. §§ 1101(a)(42), 1183(b)(i). Malianchinov's past and future showings fall short.

Start with the past. On appeal, Malianchinov builds his persecution claim on three pillars: the 2004 ski incident, the 2005 park incident and the 2006 mugging. But two problems with Malianchinov's story suffice to knock each pillar down. The first is his lack of credibility. The immigration judge did not believe Malianchinov's testimony about the alleged incidents in 2004 and 2006, a decision we will not overturn if substantial evidence supports it. *See El-Moussa v. Holder*, 569 F.3d 250, 255–56 (6th Cir. 2009). This is a modest standard, and the judge's finding meets it. In Malianchinov's written asylum application, he described the 2004 and 2006 attacks, but he made no mention of name-calling based on his Dungan heritage. Only at his removal hearing (and only after prompting from his attorney) did Malianchinov testify that his attackers called him Dungan "trash." AR 191. Inconsistencies like these permit adverse credibility findings. *See* 8 U.S.C. § 1158(b)(1)(B)(iii).

Malianchinov disagrees. He argues that the omission of ethnic slurs in his written application was a minor oversight that does not warrant an adverse credibility determination. But this is wrong twice over. First, the premise of Malianchinov's asylum claim is that he suffered persecution *because of* his ethnicity. Yet when writing his persecution story, he forgot to mention that his attackers called him "Dungan trash." Without these words, Malianchinov's tale has no ethnic-persecution hook—hardly an immaterial oversight. *See Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005). Second, whether Malianchinov's credibility problem concerned a material matter is beside the point. He filed his asylum claim in 2009, well after passage of the REAL ID Act, which allows immigration judges to make credibility findings "without regard to

whether an inconsistency . . . goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

Two pillars therefore tumble. And Malianchinov's third (the 2005 public park attack) falls for a different reason: forfeiture. Because Malianchinov has not alleged direct government persecution, he must show that he suffered persecution at the hands of "persons the government is unwilling or unable to control." *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011) (internal quotation marks and alterations omitted). Neither the immigration judge nor the Board found evidence of such government abdication in the 2005 incident, and Malianchinov failed to question these findings on appeal. He therefore has forfeited any arguments he might have on this score. *See* Reply Br. at 1–2 (confessing forfeiture); *see also Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010).

Malianchinov's allegations of future persecution suffer a similar fate. Without any past persecution to speak of, Malianchinov must show that he has an "objectively reasonable" fear of future persecution. *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005). But the Board considered Malianchinov's fears objectively *un*reasonable, because Kyrgyzstan's country reports showed only "isolated incidents of harassment," not "widespread mistreatment or persecution of . . . ethnic minorities." AR 4–5. Malianchinov makes no effort to undermine this conclusion. He argues that his testimony "evidenced a *history* of 'persecution.'" App. Br. at 27 (emphasis added). But he says nothing to contradict the Board's finding that he failed to demonstrate any reasonable fear of *future* persecution. Silence in this case means forfeiture. *Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009).

Not so fast, Malianchinov argues: The opening brief at least mentions "future persecution." True, Malianchinov wrote that the Board "must be given the first opportunity to determine whether . . . [he] should be granted asylum for humanitarian reasons should the government rebut the presumption of a well-founded fear of *future persecution*." App. Br. at 29 (emphasis added). But these two words in one sentence of one page of Malianchinov's brief do not suffice to preserve the issue. "To 'raise' an argument, a litigant must provide some minimal argumentation in favor of it," *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009), and simply noting that the Board could reconsider his future-persecution claim on remand—without arguing why remand is even appropriate in this case—does not fit the bill.

For these reasons, we deny the petition for review.