**Sandra JAMES, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

No. 14–3992.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 2015.

BEFORE: KEITH, ROGERS, and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge.

Sandra James, a native and citizen of Guyana, petitions for review of the Board of Immigration Appeals' denial of her motion to reopen an earlier removal order. In her motion, James alleged that her former counsel's ineffective assistance prejudiced the Immigration Judge's (I.J.'s) adjudication of her application for asylum by coloring the I.J.'s credibility determination. James also alleged that this constituted an "extraordinary circumstance" that excused her failure to timely file her asylum application, such that the Board should reopen her appeal. Because former counsel's alleged misconduct did not affect James' ability to timely file her asylum application, and her other arguments are similarly without merit, the Board did not abuse its discretion in denying James' motion to reopen.

James lawfully entered the United States on February 7, 2002 on a B1/B2 visitor visa. James was initially authorized to remain until May 6, 2002, and later January 6, 2003, pursuant to an extension. In April 2002, despite not having employment authorization, James began working as a cashier for a Speedway convenience store. During her employment, James' district manager informed her that Speedway would sponsor a labor certification on her behalf. Though Speedway fired James in April 2004, James contends that she "was led to believe that Speedway would continue [her] sponsorship."

In April 2004, following her employment termination and fifteen months after James' authorized period of stay expired, James met with attorney Margaret Wong, in part, to seek help in completing her pending labor certification and adjustment of status application. According to James, though Wong knew that James had overstayed her visa and worked unlawfully in the United States—and thus would be unable to adjust her status—Wong agreed to assist James in filing her employment-based immigration application. As part of James' application, Wong's office drafted and submitted a fraudulent affidavit regarding James' work history in the United States, an affidavit later used by the government to discredit James during her asylum hearing.

On November 6, 2008, after James' labor certification and I–140 petition were approved, James' former attorney Wong filed an I–485 adjustment of status application. USCIS subsequently scheduled James to appear for an interview on September 3, 2009, an interview that was rescheduled for November 19, 2009. James contends that, before her November 19, 2009 interview, however, Wong advised her not to go because "the Service would arrest [her] and place [her] in ICE detention." James,

pursuant to Wong's advice, did not appear for her interview or request rescheduling, and on December 2, 2009, Wong withdrew James' application for adjustment of status. USCIS accepted James' request for withdrawal on December 17, 2009.

On February 10, 2010, the Department of Homeland Security initiated removal proceedings against James, alleging that she was subject to removal under I.N.A. § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B) (2012), as an alien who, "after admission as a nonimmigrant[,] ... remained in the United States for a time longer than permitted." James appeared in immigration court with new counsel on October 13, 2010, where she admitted the factual allegations contained in the Notice to Appear, and conceded that she was subject to removal.

On December 15, 2010, James filed applications for asylum, withholding of removal and protection under the Convention Against Torture, claiming that she feared that her abusive ex-husband—who lived in Trinidad and Tobago—would kill her should she return to Guyana. On August 31, 2012, after James' asylum hearing, the I.J. denied James' applications and ordered that she be removed to Guyana. The I.J. found that: (1) James' testimony was not credible, in large part due to a misrepresentation regarding James' work history in James' earlier employment-based immigration application and James' failure to provide sufficient corroborating evidence; (2) James was time-barred from filing an asylum application because she failed to comply with the one-year filing requirement or file within a reasonable time period after her lawful non-immigrant status expired, and did not establish an "exceptional circumstance" to excuse her delay; (3) "even if [James] was fully credible, she ... failed to establish past persecution for purposes of asylum

and withholding of removal for the country of Guyana"; and (4) James did not meet her burden of proof with respect to the Convention Against Torture claim.

The Board of Immigration Appeals subsequently dismissed James' appeal on February 21, 2014. First, the Board found that James' lack of knowledge about asylum did not excuse her failure to timely file her application and that James had failed to show that her former counsel's ineffective assistance "constitut[ed] an exceptional circumstance in accord with 8 C.F.R. § 1208.4(a)(5)(iii)." Second, the Board determined that the I.J.'s adverse credibility finding was not clearly erroneous. Third, the Board agreed with the I.J. that, "even assuming the truth of [James'] testimony," she had "failed to establish a clear probability of persecution for withholding of removal," or provide sufficient evidence to establish eligibility for relief under the Convention Against Torture.

James did not petition for review of the Board's February 21, 2014 decision; instead, on May 21, 2014, James filed a motion to reopen, alleging that former counsel Wong's ineffective assistance—ineffective assistance first brought to light during the August 31, 2012 hearing—colored the I.J.'s credibility finding and "constitute[d] an extraordinary circumstance [that] toll[ed] the one year requirement for the filing of Asylum." In particular, James claimed that Wong (1) agreed to represent her in her employment-based immigration case despite knowing that James would be "unable to adjust status ... in the United States" due to her "unlawful presence and unauthorized work"; (2) instructed her to sign an affidavit which falsely indicated that James had "never worked without authorization in the United States"; and (3) informed her not to attend her I-485 interview so as to avoid arrest and detention, without mentioning that "failure to appear would lead to [her] being placed in removal proceedings." According to James, Wong's "fraudulent and unethical actions" warranted a reopening of her asylum application.

On September 22, 2014, the Board denied James' motion, finding that, "[e]ven assuming, without deciding, that [James] ha[d] satisfied the procedural requirements for presenting a claim of ineffective assistance of counsel against attorney Wong, she ha[d] not shown that she was prejudiced by the claimed ineffective assistance in her removal proceedings." In particular, the Board noted that James had not shown that "attorney Wong's representation affected [James'] undisputed removability as an alien who overstayed her authorized period of stay (which ... expired on January 6, 2003, more than a year *before* she retained attorney Wong to represent her)." (emphasis in original).

The Board also found that the I.J. had not erred in pretermitting James' asylum application for being untimely filed. The Board first reasoned that because James entered the United States on February 7, 2002, and did not file her asylum application until December 15, 2010, she "[c]learly ... did not file her asylum application within one year of her arrival." Further, the Board explained that, though James "may have maintained lawful non-immigrant status until January 6, 2003, she did not file her asylum application within a reasonable period after that date." Because attorney Wong did not agree to represent James in her immigration proceedings until April 2004—fifteen months after James' authorized period of stay expired and over two years after she first arrived in the United States—James did not demonstrate that "Ms. Wong's representation adversely affected [James'] ability to timely apply for asylum.".

Finally, the Board dismissed James' contention that Wong's ineffective assistance prejudiced her applications by contributing to the I.J.'s adverse credibility finding on alternative, dispositive grounds, stating:

> Although an adverse credibility finding was made, the Immigration Judge went on to determine that even assuming [James'] credibility, she did not demonstrate that she was persecuted in the past, and she did not establish eligibility for withholding of removal or protection under the United Nations Convention Against Torture. Moreover, the Immigration Judge's credibility determination had no effect on his findings regarding removability (which was conceded), or as to the unexcused, untimely filing of [James'] asylum application.

On appeal, James argues that the Board erred in concluding that Wong's malfeasance did not constitute ineffective assistance that prejudiced James' asylum application, that Wong's fraudulent actions had no bearing on the I.J.'s credibility findings, and that the I.J. correctly pretermitted James' asylum application.

The Board did not abuse its discretion in denying her motion to reopen her asylum claim based on Wong's ineffective assistance. "[W]e review the BIA's denial of a motion to reopen for abuse of discretion." *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 (6th Cir.2009). Because "[t]he decision to grant or deny a motion to reopen ... is within the discretion of the Board," 8 C.F.R. § 1003.2(a), we will only find such an abuse "if the denial ... 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Bi Feng Liu*, 560 F.3d at 490 (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir.2005)). James does

not address in her brief the Government's reasons for concluding that Wong's alleged ineffective assistance did not prejudice James' ability to timely file her asylum application, and James filed no reply brief to respond to the Government's arguments in this regard.

Here, because James had already failed to timely file her asylum application well before she hired Wong to represent her in immigration proceedings, James could not show that Wong's ineffective assistance prejudiced her ability to timely file. An application for asylum may be considered, notwithstanding failure to timely file, if the alien can demonstrate "to the satisfaction of the Attorney General ... the existence of ... extraordinary circumstances[, such as the ineffective assistance of counsel,] relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(5)(iii), (iv). The "extraordinary circumstances," however, must "refer to events or factors directly related to the [alien's] failure to meet the 1–year deadline." 8 C.F.R. § 1208.4(a)(5). Though James maintained lawful non-immigrant status until January 6, 2003—an extraordinary circumstance that the Board considered in excusing James' failure to file her asylum application within one year of her arrival in the United States—she nevertheless failed to file her asylum application within a reasonable period of time after the expiration of her lawful status. The maintenance of lawful, non-immigrant status may constitute an "extraordinary circumstance" excusing an applicant's failure to file within one year of arrival in the United States, 8 C.F.R. § 1208.4(a)(5)(iv). However, an applicant must still file the asylum application within a reasonable period of time following the expiration of lawful status. *Id.* The Board did not abuse its discretion in finding that the fifteen months that elapsed between the expiration of James' lawful non-immigrant

status and James' hiring of Wong to represent her in immigration proceedings constituted an unreasonable delay. The Board has previously indicated that, in general, "waiting six months or longer after expiration or termination of status would not be considered reasonable." *Matter of T–M–H & S–W–C–*, 25 I. & N. Dec. 193, 194–95 (B.I.A.2010). Thus, because James had already failed to timely file before Wong's representation even began, any subsequent ineffective assistance rendered by Wong could not have prejudiced.James' ability to timely file.

James also argues extensively that Wong's ineffective assistance prejudiced her by coloring the I.J.'s adverse credibility finding. The argument is moot with respect to James' asylum claim, because the merits of an asylum claim do not need to be addressed if the asylum claim has, like this one, been properly barred as untimely. Because James' brief discusses the I.J.'s adverse credibility determination only in relation to her asylum claim, we could stop here. Even assuming, however, that James' brief could be construed to challenge the denial of rehearing of her withholding of removal and Convention Against Torture (CAT) claims, she does not address the Board's reasoning that, *even if credible*, she did not meet the requirements for those avenues of relief. Logically, to support the reopening petition—as opposed to the underlying removal order—she had to show some way in which the alleged malpractice would have changed the Board's previous analysis. She has not done so.

Because the Board of Immigration Appeals did not abuse its discretion in denying James' motion to reopen, James' petition for review is denied.