NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0687n.06

Case No. 14-4248

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 09, 2015
DEBORAH S. HUNT, Clerk

GRACIANO RODRIGUEZ-TOVAR,          )
                                   )
    Petitioner,                    )
                                   )
v.                                 )          ON PETITION FOR REVIEW
                                   )          FROM THE UNITED STATES
LORETTA E. LYNCH, Attorney General, )         BOARD OF IMMIGRATION
                                   )          APPEALS
    Respondent.                    )
                                   )

**O P I N I O N**

BEFORE:  GIBBONS and McKEAGUE, Circuit Judges; ANDERSON, District Judge.[*]

    **McKEAGUE, Circuit Judge.**  Graciano Rodriguez-Tovar, a Mexican citizen, seeks review of the denial by the Board of Immigration Appeals (BIA) of his motion to reopen his proceedings.  The immigration judge denied his petition for withholding of removal under the Immigration and Nationality Act and his claim for protection under the Convention Against Torture (CAT).  The BIA dismissed his appeal and ordered him to voluntarily depart within sixty days.  He then filed his motion to reopen proceedings, which the BIA denied.  Rodriguez-Tovar contends that he would be persecuted if he returned to Mexico because he is a returning

---

    [*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

deportee. Because we find that the decision of the BIA to deny his motion to reopen was not an abuse of discretion, we deny Rodriguez-Tovar's petition.

**I**

Rodriguez-Tovar is a native and citizen of Mexico. He first illegally entered the United States in 1998, but he voluntarily returned to Mexico to visit his parents on November 25, 1999. While attempting to illegally reenter the United States, Rodriguez-Tovar was apprehended by border patrol agents on February 19, 2000. He again illegally reentered the United States on February 25, 2000, before returning to Mexico to visit his parents on March 15, 2007. He was apprehended by border patrol agents on May 16, 2007, while attempting to illegally reenter the United States. On June 29, 2007, he illegally reentered the United States and was apprehended one year later by Michigan State Police.

On February 19, 2009, Rodriguez-Tovar conceded his removability as charged during a hearing before an immigration judge. He sought relief from removal, however, in the form of withholding of removal under 8 U.S.C. § 1231(b)(3) and protection from torture under CAT. He conceded that he was statutorily ineligible for asylum because he had not filed his application within one year of his arrival in the United States.

*Hearing Before the Immigration Judge.* During a merits hearing before the immigration judge, Rodriguez-Tovar testified to the following: He was born and raised in San Miguel de Allende, Guanajuato, Mexico. He was never mistreated or harmed while residing in San Miguel de Allende. In June 2007, he and his wife traveled fifteen hours by bus from his hometown to Laredo, Mexico, to illegally reenter the United States. While at a bus station in Laredo, a smuggler approached them and offered to transport them across the border for $3,000 per person. He and his wife agreed to obtain money from relatives in the United States to pay the smugglers

upon their arrival in the United States, and they left the bus station with the smugglers to cross the border. He believed that the smugglers were kidnapping them when they did not release him and his wife as promised and instead took them to a house in Laredo, Texas to await payment of the smuggling fee. The smugglers took the money he and his wife were carrying as well as their Mexican identification documents. He claimed that the smugglers threatened to shoot them if they tried to escape before paying. His brother sent the smugglers $2,500, but Rodriguez-Tovar and his wife still owed the smugglers a few thousand dollars. He claimed that the smugglers then took him and his wife to a hotel, where they allowed him and his wife to go to a restaurant to eat breakfast. He and his wife decided to leave without informing the smugglers, and his brother arranged for an individual to drive his wife and him from Laredo, Texas to Indiana. He did not report the incident to law enforcement. Neither he nor his wife has had any contact with the smugglers since they left the hotel in 2007.

Rodriguez-Tovar claimed that he is afraid of returning to Mexico "because of my children, because they're from here, and there are so many kidnappings." A.R. 444. He believed that the smugglers who kidnapped him in 2007 could kidnap his children now because they had kept his and his wife's identification documents. When asked how the kidnappers would know that he had returned to Mexico, Rodriguez-Tovar answered, "I don't know. I couldn't say." A.R. 447–48. Additionally, when asked who else he fears in Mexico, Rodriguez-Tovar answered, "It's just that there's so many people, there's so many that do harm." A.R. 448. He stated that he does not "trust much in the Mexican authorities." He further testified that he fears more for his United States citizen children who would accompany him to Mexico than for himself, explaining that "because people that come from here going there, they think that you

- 3 -

have money or they think that you have more money, a lot more money, and so there are a lot of kidnappings because of that." A.R. 445–446.

In an oral decision issued on August 19, 2013, the immigration judge denied Rodriguez-Tovar's application for relief and protection and ordered him to be removed to Mexico. The immigration judge first evaluated Rodriguez-Tovar's credibility. The immigration judge noted that Rodriguez-Tovar did not claim any fear of returning to Mexico until more than three years after his initial hearing, and that "certainly calls into question the validity of that fear." A.R. 249. The immigration judge also noted, however, that "in comparing [his] testimony with the information contained in his written I-589 application, that he basically testified consistent with that information." *Id.* The immigration judge concluded that "based upon the totality of the circumstances, being very generous to [Rodriguez-Tovar] in its credibility assessment, this Court will not render an adverse credibility finding in this case." *Id.*

The immigration judge then considered and denied Rodriguez-Tovar's application for withholding of removal. The immigration judge found that his "proposed social group, individuals with ties to the United States, which would make him more visible in Mexico, is simply too broad and too amorphous for this Court to find that it has the requisite particularity." A.R. 250. The immigration judge also found that, regardless of whether Rodriguez-Tovar's particular social group was cognizable, he "failed to set forth any harm that was brought to him as a result of him having ties in the United States." A.R. 251. There was "absolutely no indication that [his] kidnappers or smugglers targeted [him] because he has family ties to the United States," and he had only articulated "a fear of general country conditions in Mexico brought on by unfortunate rampant crime in many areas in Mexico." A.R. 252.

Finally, the immigration judge considered and denied Rodriguez-Tovar's application for CAT protection. The immigration judge stated that there was "absolutely no evidence" that he had suffered past persecution or that the Mexican government would acquiesce to anyone torturing Rodriguez-Tovar if he returned to Mexico. A.R. 252. The immigration judge further noted that Rodriguez-Tovar's testimony regarding his claimed fear that he or his children would be harmed in Mexico was "vague and equivocating." A.R. 253.

*BIA's May 28, 2014 Decision.* Rodriguez-Tovar appealed the immigration judge's decision to the BIA and filed a motion to remand the case in light of *Umana-Ramos v. Holder*, 724 F.3d 667 (6th Cir. 2013). The BIA denied Rodriguez-Tovar's motion to remand and dismissed the appeal. It conducted *de novo* review of the immigration judge's denial of Rodriguez-Tovar's application for withholding of removal, and it found that his "proposed social group consisting of 'individuals with ties to the United States which would make them more visible in Mexico' is too broad and amorphous to constitute a valid social group and thus it lacks sufficient 'particularity.'" A.R. 110. The BIA also ruled that he "has not established a nexus between his alleged membership in this group and the alleged kidnapping of him and his wife by individuals he hired to smuggle them into the United States." *Id.* Additionally, the BIA concluded that Rodriguez-Tovar had failed to demonstrate his eligibility for CAT protection. Rodriguez-Tovar never filed a petition for review of this BIA decision.

*BIA's November 24, 2014 Decision.* On July 25, 2014, Rodriguez-Tovar filed a motion to reopen with the BIA. His motion rested on two grounds: (1) subsequent cases decided by the BIA that he maintained had changed the "instructions" given to aliens on how to prove a particular social group, A.R. 52, and (2) four articles that he described as demonstrating changed country conditions in Mexico. On November 24, 2014, the BIA denied his motion to reopen.

First, the BIA rejected his claim that the Board's decisions in *Matter of W-G-R-*, 26 I. & N. Dec. 227 (BIA 2014), and *Matter of M-E-V-G-*, 26 I. & N. Dec. 208 (BIA 2014), mandated reopening. The BIA held that even if these cases were intervening case law, there was no basis for remand because "even were we to allow [Rodriguez-Tovar] to formulate a different social group, we would still find that he has not established a nexus between his membership in such a group and the alleged harm he suffered." A.R. 7.

The BIA then considered the four articles that Rodriguez-Tovar proffered with his motion to reopen. The first article describes the increasing violence committed by gangs in the border state of Tamaulipas,[1] including kidnappings, killings, and theft. A.R. 79–83. The article also identifies deportees as easy targets for these gangs. *Id.* The second article discusses Mexican drug cartels and political corruption, as well as the Mexican government's efforts to combat these cartels. A.R. 85–96. It mentions the general danger these cartels pose to deportees. *Id.* The third article describes the vulnerability of deportees to cartels committing violent crime in Tamaulipas, Mexico. A.R. 98–100. The final article generally outlines crime and violence in Mexico. A.R. 102–07.

As an initial matter, the BIA noted that Rodriguez-Tovar "need not demonstrate changed country conditions because his motion is timely." A.R. 7. It then concluded that the information in the articles was not material to his asylum claim because the articles were too general and did not establish a nexus between his membership in a particular social group (assuming he could show such membership) and his fear of persecution. It also found that the articles did not support a finding that he was eligible for CAT protection, because they did not demonstrate that he would likely be tortured with the acquiescence of the Mexican government if he returned to

---

[1] Tamaulipas, Mexico is fifteen hours by bus from Rodriguez-Tovar's hometown of San Miguel de Allende, Mexico, where he has never been harmed. Resp. Br. at 31.

Mexico. Thus, the BIA denied Rodriguez-Tovar's motion to reopen. It is this BIA decision that he now appeals.

## II

We review the BIA's denial of a motion to reopen for abuse of discretion. *Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009). An abuse of discretion occurs if the decision to deny a motion to reopen "'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* at 490 (quoting *Allabani v. Gonzalez*, 402 F.3d 668, 675 (6th Cir. 2005)). The Attorney General's discretion to reopen a matter is "broad," *INS v. Doherty*, 502 U.S. 314, 323 (1992), and "a party seeking reopening … bears a heavy burden." *Alizoti v. Gonzalez*, 477 F.3d 448, 451 (6th Cir. 2007). The evidence sought to be offered at the reopened proceeding must be "'material and … not available and could not have been discovered at the former hearing.'" *Sako v. Gonzalez*, 434 F.3d 857, 863 (6th Cir. 2006) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)); *see also* 8 C.F.R. § 1003.2(c)(1). We apply the substantial evidence standard to review the BIA's factual determinations, reversing only if the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (citing *INS v. Elias-Zacarias*, 502 U.S. 467 (1992)) (emphasis in original).

There are "'at least' three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *INS v. Doherty*, 502 U.S. 314, 323 (1992) (quoting *INS v. Abudu*, 485 U.S. 94, 104

(1988)). Here, the BIA denied the motion to reopen because Rodriguez-Tovar had not established that he would be entitled to the grant of relief he sought.

## A

Rodriguez-Tovar argues that two decisions by the BIA after his proceedings warrant his case being reopened. Specifically, he points to the BIA's issuance of *Matter of M-E-V-G-* and *Matter of W-G-R-*. These two decisions, Rodriguez-Tovar argues, change the requisite showing for particularized social group, an element of both a withholding of removal and an asylum claim.[2] In denying his motion to reopen, the BIA held that "even were we to allow the respondent to formulate a different social group, we would still find that he has not established a nexus between his membership in such a group and the alleged harm he suffered." A.R. 7. And so, the BIA notes, his claim would fail for the same reason it failed previously. We need not decide whether *Matter of M-E-V-G-* and *Matter of W-G-R-* are intervening case law, because they do not affect the BIA's May 28, 2014 alternative holding. And, as discussed below, there is substantial evidence to support the BIA's finding that Rodriguez-Tovar failed to establish a nexus between his alleged social group (returning deportees) and his fear of persecution. The BIA therefore did not abuse its discretion in denying Rodriguez-Tovar's motion to reopen upon finding that *Matter of M-E-V-G-* and *Matter of W-G-R-* did not affect its denial of his application for withholding of removal.

## B

Nor did the BIA abuse its discretion in determining that Rodriguez-Tovar had failed to demonstrate a nexus between his membership in a particular social group and his fear of persecution. Rodriguez-Tovar provided four articles that described gang violence in Mexico,

---

[2] As Rodriguez-Tovar frames it, he would no longer have to show that his proposed social group was socially visible to his persecutors, but instead could show that his social group is recognized by Mexican society as a whole. Pet. Br. 21.

including violence against returning deportees as evidence of changed country conditions. Rodriguez-Tovar argues that the BIA used the incorrect burden of proof when considering his asylum claim. There is nothing in the BIA's decision that supports such a claim. In fact, the BIA found the evidence Rodriguez-Tovar presented in his motion to be *immaterial* because it did not address his failure to show a nexus. A.R. 7.

There is substantial evidence to support the BIA's finding that Rodriguez-Tovar did not demonstrate a nexus between his membership in a particular social group (returning deportees) and his fear of persecution. First, Rodriguez-Tovar did not suffer any past persecution. According to Rodriguez-Tovar, kidnappers held him and his wife for pecuniary reasons, not because of their perceived ties to the United States. Mistreatment that is not tied to a protected ground does not constitute persecution, and so Rodriguez-Tovar and his wife were not persecuted when they were allegedly kidnapped by smugglers he hired. *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137–38 (6th Cir. 2010).

Additionally, Rodriguez-Tovar has failed to demonstrate a fear of future persecution on the basis of his membership in a particular social group. Rodriguez-Tovar claims that the BIA did not consider his fear of future persecution at all, but the BIA's ruling demonstrates that it did consider the articles he presented describing "general violence in Mexico on account of organized crime and gang violence" as well as "violence directed towards returning deportees" before deciding that "such general articles do not address the respondent's lack of a nexus showing as previously stated." A.R. 7. A generalized fear of violence is insufficient to establish persecution. *Almuhtaseb v. Gonzalez*, 453 F.3d 743, 750 (6th Cir. 2006). The BIA found that the four articles that Rodriguez-Tovar proffered describing gang violence in Mexico and violence directed towards returning deportees were too "general" and "d[id] not address [his]

lack of a nexus showing as previously stated." A.R. 7. We have no reason to conclude otherwise. Accordingly, the BIA did not abuse its discretion in denying Rodriguez-Tovar's motion to reopen.

## C

The Convention Against Torture provides protection to individuals facing removal who are likely to be tortured if returned to their home county. To prevail on a claim under the CAT, the petitioner must prove that it is *more likely than not* that he will be tortured if removed to the designated country. 8 C.F.R. § 208.16(c)(2); *see also Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006). The regulations define torture as the intentional infliction of pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). "'An applicant for relief need not show that the harm [he] faces is based on one of the five grounds … required under the INA, but rather must establish a *particularized* threat of torture.'" *Bi Xia Qu v. Holder*, 618 F.3d 602, 610 (6th Cir. 2010) (emphasis in original) (quoting *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010)).

The BIA evaluated the four articles Rodriguez-Tovar proffered as the basis for his motion to reopen because of changed country conditions and ruled that the articles did not support a likelihood that he "would be tortured in Mexico with the acquiescence of the Mexican government." A.R. 7. Rodriguez-Tovar first objects to the BIA's use of the word "government" instead of "public official," as used in the regulations. 8 C.F.R. § 1208.18(a)(1). We have never held that use of the phrase "public official" rather than the synonym "government" is required, and we decline to do so here. *See, e.g.*, *Palokaj v. Holder*, 510 F. App'x 464, 469 (6th Cir. 2013) ("Petitioner has not asserted any direct conduct by the Albanian government with respect to his

allegations of torture, nor has he shown any acquiescence or complicity in torture by the government, because he never even reported the alleged incidents to the authorities."); *Perez-Morales v. Holder*, 448 F. App'x 585, 589 (6th Cir. 2011) ("He believes that the Guatemalan government is corrupt and unable or unwilling to protect him and others from gang violence. Thus[, he believes] … his return … will create a strong likelihood that gang members will torture him as a result of governmental acquiescence."); *Aoraha v. Gonzales*, 209 F. App'x 473, 477 (6th Cir. 2006) ("And because the Aorahas have failed to establish that Iraq's interim government instigated, consented to or acquiesced in mistreatment of Christians, the BIA's denial of the Convention Against Torture claim was appropriate as well.").

There is substantial evidence to support the BIA's determination that Rodriguez-Tovar has not shown he will likely be tortured if he returns to Mexico. The only evidence Rodriguez-Tovar offered in his motion to reopen were four articles describing general gang violence in Mexico, some of which is directed towards returning deportees. The BIA ruled that such evidence failed to show that he would likely be tortured with the acquiescence of Mexican public officials if removed to Mexico. This determination is not "arbitrary, irrational, or contrary to law." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). In fact, we agree that this evidence is insufficient to show that Rodriguez-Tovar is *more likely than not* to be tortured if he returns to Mexico. Thus, the BIA did not abuse its discretion when it found that the articles that Rodriguez-Tovar proffered with his motion to reopen did not establish his eligibility for CAT protection.

**D**

Finally, Rodriguez-Tovar asks this court to hold his petition in abeyance or refer it to mediation until his Deferred Action for Childhood Arrivals application is processed. We note

that he did not raise this request until his reply brief. "We will generally not hear issues raised for the first time in a reply brief." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001); *see also United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989). Nonetheless, the record shows that Rodriguez-Tovar last reentered the United States on June 29, 2007. Continuous residence since June 15, 2007 is required to be considered for DACA. *Consideration of Deferred Action for Child Arrivals (DACA)*, U.S. CITIZENSHIP & IMMIGR. SERVICES, http://www.ucis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-daca (last visited Oct. 8, 2015). Rodriguez-Tovar does not meet this requirement and therefore is not likely to prevail on his DACA application. Accordingly, we decline to hold Rodriguez-Tovar's petition in abeyance. We also decline to refer this case to mediation.

### III

For the foregoing reasons, Rodriguez-Tovar's petition for review is DENIED. His requests that the case be held in abeyance or referred to mediation are also DENIED.